UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| UNITED STATES OF AMERICA,      ) | |
|                 ) | |
|      Plaintiff,            ) | Criminal Action No. 6: 06-105-DCR |
|                 ) | |
| V.                      ) | |
|                 ) | |
| DONALD R. MARTIN,          ) | **MEMORANDUM OPINION** |
|                 ) | **AND ORDER** |
|      Defendant.         ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Donald Martin is currently serving a 284-month term of imprisonment following his conviction for possessing visual depictions of a minor he induced to engage in sexually explicit conduct. [*See* Record Nos. 1, 33.] Over five years of the sentence remain unserved, but Martin has filed a motion for compassionate release or a sentence reduction pursuant to 18 U.S.C. § 3582(c). [Record No. 46] His request is supported by five alleged "factor[s] of extraordinary and compelling reasons" that he suggests warrant a sentence reduction. [*Id.* at p. 2]

When a defendant files a motion for compassionate release, the Court must determine whether the "three substantive requirements for granting relief" contained in 18 U.S.C. § 3582(c)(1)(A) are satisfied.[1] *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). To grant relief, the Court must find: (1) "that 'extraordinary and compelling reasons' warrant a reduction"; (2) "that the reduction is consistent with the applicable policy statements issued by

---

[1] Martin's motion appears to be procedurally proper. "[A]n imprisoned person may file a motion for compassionate release after (1) exhausting the BOP's administrative process; or (2) thirty days after the warden received the compassionate release request—whichever is earlier." *Jones*, 980 F.3d at 1105. Martin provided a request for compassionate release, dated May 4, 2020, which addressed to the warden of FCI Ashland. [Record No. 46-2, pp. 1-2]

-1-

the Sentencing Commission"; and (3) "that the § 3553(a) factors, to the extent they apply, support the reduction." *United States v. Brummett*, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020). To determine whether extraordinary and compelling reasons warrant a reduction, the Court previously looked exclusively to the policy statements contained in United States Sentencing Guideline § 1B1.13. *See* 28 U.S.C. § 994(t) (directing the United States Sentencing commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction"). The policy statement was promulgated under a statutory regime that allowed only the Bureau of Prisons to file motions for a sentence reduction. For this reason, it is no longer "an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Elias*, 2021 WL 50169, at *2; *United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020). Rather, this Court has "full discretion to define 'extraordinary and compelling' without consulting the policy statement." *Jones*, 980 F.3d at 1111.

As noted, Martin offers five reasons the Court should consider extraordinary and compelling, either individually or in combination. He suggests that his medical condition, prison conduct, rehabilitation, the length of his sentence, and the COVID-19 pandemic justify a reduction. [Record No. 46, pp. 2-4]

Concerning his medical conditions, Martin relies on a number of ailments. He allegedly suffers from obesity, "prostate issues," "a severe case of acid reflux," and "immune system weakness." [*Id.* at p. 2] However, these conditions are not confirmed by medical records. The Court could deny the motion on this basis alone. *Elias*, 2021 WL 50169, at *3. But taking Martin's allegations as true, the conditions he identifies do not constitute an extraordinary and

compelling reason for a sentence reduction. The nonbinding policy statement provides useful guidance regarding medical conditions that may justify relief:

> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> (ii) The defendant is—
>     (I) suffering from a serious physical or medical condition,
>     (II) suffering from a serious functional or cognitive impairment, or
>     (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n. 1(A).

Martin does not allege that he is suffering from a terminal illness or that his conditions render him unable to provide self-care within the prison environment. Further, he states that two of the conditions (i.e., the prostate issue and acid reflux) are treated with medication. [Record No. 46, p. 2] There is no support for his claim that he suffers from a weakened immune system. And despite alleging reduced mobility due to obesity, he contends that his "hard work ethic" has allowed him to excel in his current employment. [*Id.* at pp. 2-3] In short, the Court concludes that Martin's current medical state does not constitute an extraordinary and compelling circumstance that would justify release.

The remainder of Martin's reasons find no analogue in the policy statements. He suggests that nearly fifteen years of good behavior and his extensive efforts toward rehabilitation are reasons for a reduction or release. [Record No. 46, pp. 2-3] He provided evidence that, while incarcerated, he has completed over thirty education courses, earned his G.E.D., and maintained steady employment. [Record Nos. 46, pp. 2-3; 46-2, p. 5] These

admirable efforts will likely serve Martin both now and well after his term of incarceration ends. But good behavior and education, which are expected of incarcerated individuals, do not constitute "extraordinary and compelling circumstances" that warrant a sentence reduction.

Next, the length of Martin's sentence does not support a reduction. He expresses concern about his "unusually long prison sentence," but acknowledges that it was "necessary to . . . protect the public from future crimes." [Record No. 46, p. 3] The sentence continues to be necessary to protect not only the public at large, but a very vulnerable group: children. And Martin's sentence was not unusual. One of his offenses carries a mandatory minimum sentence of fifteen years, 18 U.S.C. § 2255(e), and Martin received a sentence within the Guidelines range for his offense. [*See* Record No. 39, pp. 8-9.] The undersigned imposed a sentence of 284 months after considering *all* the factors listed in 18 U.S.C. 3553(a), but "in particular taking into account . . . the need to avoid unwarranted sentencing disparities." [*Id.* at p. 9] The length of Martin's sentence is justified by the seriousness of his offense conduct.

Finally, Martin relies on the COVID-19 pandemic. Because he is employed at the UNICOR Factory at FCI Ashland, he states that he and his co-workers were segregated from the general population. [Record No. 46, p. 3] Within this "open dorm with 8'x10' cubicles and 4' dividing walls," inmates are allegedly "sleeping head to toe with the inmate in the next cubical, breathing the same air[,] . . . sharing same toilets, sinks, and showers," and few inmates are wearing masks. [*Id.*] Martin suggests that avoiding infection is "not possible," and he fears that his age and medical conditions place him a higher risk of severe infection.

Martin's concerns are legitimate, but they are insufficient to justify release or a sentence reduction. While he is correct that his age and obesity are risk factors for COVID-19,[2] he does not allege that he has been exposed, infected, or exhibited symptoms. And although there are confirmed cases of the virus at FCI Ashland,[3] there is no evidence of a widespread outbreak. Martin's filings detail the efforts the BOP has undertaken to prevent the spread of COVID-19 at FCI Ashland. He attached memos from Warden H. Allen Beard to inmates dated November 24, 2020, and December 4, 2020, reporting much higher levels of active infections. [Record No. 46-2, pp. 3-4] Both memos direct inmates to "maintain a high level of sanitation," "wear your face covering," and "wash your hands frequently. . . ." [*Id.*] The current reported case numbers indicate that these efforts have been successful at mitigating further infections. Therefore, Martin's concerns about potential COVID-19 infection do not constitute an extraordinary and compelling reason for a reduction.[4]

Accordingly, it is hereby

---

[2]   *See People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION (updated Dec. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[3]   FCI Ashland has a total population of 957 inmates. *See FCI Ashland*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/ash/ (last accessed Jan. 12, 2021). As of January 11, 2021, seventeen inmates and eleven staff were infected with COVID-19, and over 340 inmates and forty staff had recovered. Tragically, six inmates at FCI Ashland had succumbed to the virus. *Covid-19 Coronavirus*, FEDERAL BUREAU OF PRISONS (updated Jan. 11, 2021), https://www.bop.gov/coronavirus/.

[4]   Hopefully, Martin's concerns regarding the possibility of a future infection will be short-lived. The BOP is presently working with the Center for Disease Control and Prevention and a public-private partnership established by the federal government, known as Operation Warp Speed, to ensure that the BOP remains prepared to administer the COVID-19 vaccine to inmates as soon as it is available. The Court has been advised that, as of January 4, 2021, doses of vaccine have been delivered to 48 BOP facilities in various regions of the country.

**ORDERED** that Defendant Donald R. Martin's motion for compassionate release or a sentence reduction [Record No. 46] is **DENIED**.

Dated: January 13, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky